STATE OF NORTH CAROLINA v. JAMES DOUGLAS JOYNER AND IN RE: JERRY PAUL

No. 777SC639

(Filed 17 January 1978)

**Attorneys at Law § 5; Contempt of Court § 2.2— contempt of court—attorney's failure to file appeal or petition for certiorari—misrepresentations to court**

An attorney was properly held in contempt of court for misbehavior of an officer of the court in an official transaction in violation of G.S. 5-1(8) where the court found upon supporting evidence that the attorney (1) gave notice of appeal for a criminal defendant, permitted the trial court to order that he be provided a transcript of the trial at the State's expense, and accepted the transcript when he had no intention of perfecting the appeal or using the

transcript in connection with an appeal; (2) deliberately caused defendant to lose his right of appeal by failing and refusing to obtain an extension of time within which to prepare and serve and file the record on appeal; (3) wilfully and intentionally failed and refused to file a petition for a writ of certiorari in the Court of Appeals to obtain appellate review of defendant's trial and misrepresented to the court that he had filed such a petition.

APPEAL by respondent from *Fountain, Judge.* Order entered 8 March 1977 in Superior Court, WILSON County. Heard in the Court of Appeals 6 December 1977.

On 30 December 1976 this Court entered an order directing the Superior Court of Wilson County to conduct a hearing for the purpose of determining whether attorney Jerry Paul had "breached his professional obligation to his client," James Douglas Joyner, and whether Joyner had been "denied a right of appellate review of his trial." This Court then directed the presiding judge to "take such action in the premises as he deems appropriate under his findings of fact." Pursuant to this order a hearing was scheduled for 17 January 1977, and Paul was ordered to appear for disposition of the following issues:

"1. Whether Mr. Paul has breached his professional obligation to his client, James Douglas Joyner;

"2. Whether the defendant has been denied a right of appellate review of his trial;

"3. Whether Mr. Paul falsely and knowingly represented to the Honorable Walter W. Cohoon, Judge presiding in Wilson Superior Court on or about November 30, 1976, that he had filed a petition for a Writ of Certiorari to the Court of Appeals and that said matter was pending in the Court of Appeals and had not been acted on by that Court;

"4. Whether Mr. Paul was and is in contempt of the Superior Court of Wilson County."

After a continuance, the hearing was conducted on 7 March 1977, and the parties, the petitioner James Joyner and the respondent Jerry Paul, presented evidence. At the completion of the hearing the trial judge made the following pertinent findings of fact:

"James Douglas Joyner was found guilty in six different cases at the May 1976 Session of Wilson Superior Court; in

three of those cases he was found guilty of possession of a controlled substance with intent to deliver the same and in the other three cases he was found guilty of the actual sale of the controlled substances. In the possession cases he was sentenced to the Wilson County Jail for Five Years to be assigned to work under the supervision of the Department of Correction, and in the cases wherein he was convicted of the sale of controlled substances he was sentenced to the Wilson County Jail for a period of Five Years to be assigned to work under the supervision of the Department of Correction, this sentence to begin at the expiration of the preceding sentence. The defendant at that time was and had been since shortly after his arrest represented by Mr. Jerry Paul, who was privately employed to represent him.

"Upon the entry of the judgments as aforesaid, Mr. Paul as attorney for the then defendant, Joyner, gave notice of appeal to the Court of Appeals, which notice was given in open court and an entry to that effect was made on each commitment. On the same day, the Honorable Albert W. Cowper, Judge Presiding, entered an order providing that the court reporter should prepare the transcript of the trial and furnish the original to defendant's counsel and a copy to the district attorney of the Seventh Judicial District and that the State of North Carolina should pay for the transcript only. The transcript was delivered by mail to Mr. Paul on August 25, 1976, which was more than sixty days after the date of judgment and after the time for serving case on appeal had expired. There was no extension of time to prepare and serve case on appeal and there is no documentary evidence that any extension was ever requested. Mr. Paul testified that he mailed a request to Judge Cowper and received no reply. It does not appear, however, that any appearance was made before any judge requesting such extension.

"On July 30, 1976, an assistant district attorney for the Seventh Judicial District caused to be served upon Mr. Paul a notice that he would make a motion in the Superior Court for an order dismissing the appeal in the case because no case on appeal had been served on the State within the sixty days allowed. Honorable Walter W. Cohoon, Judge Presiding in Wilson Superior Court, on November 30, 1976, heard the

motion to dismiss the appeal in each case. Upon the hearing of the motion, Mr. Paul was present representing James Douglas Joyner and resisting the motion to dismiss, in that he represented to the Court that he had previously filed petition for certiorari in the Court of Appeals, and he further represented to the Court that the petition was then pending in the Court of Appeals and had not been acted upon by the Court of Appeals. Based upon such representation, the judge presiding at that time entered an order dismissing the appeal but ordered a delay of the commitment until Thursday, December 9, 1976, at 10:00 o'clock, said order providing that the defendant should surrender himself to the Sheriff of Wilson County at that time unless prior to that time the Clerk of Superior Court had been furnished a certified copy of an order for bond for the defendant by the Court of Appeals in connection with the aforesaid petition for certiorari. When Mr. Paul made those representations to Judge Cohoon, he did not know that a petition for certiorari had been filed, and does not know at this time if he ever made any application for bond with the Court of Appeals.

"The Court has before it a certificate from the Clerk of the Court of Appeals dated January 11, 1977, to the effect that on that date no petition for certiorari had been filed by Mr. Paul on behalf of James Joyner, and no application for appearance bond was filed.

"Mr. Paul now informs the Court that it was never his intention to perfect an appeal to the Court of Appeals and he did not wish to have a petition for certiorari allowed by the Court of Appeals, for that it was his intention to pursue such remedies as Joyner had in the Federal Courts with the hope of having the sentences imposed reduced from a total of Ten Years to Five Years. However, he accepted the transcript of the case as prepared by the court reporter with knowledge that the Trial Judge had ordered the State to pay for the transcript for him and copy for the district attorney for the purpose of appeal.

"When Mr. Paul was first employed there was an agreement that he should be paid $3500.00 to represent James Joyner and his wife, who was charged with violating the Controlled Substances Act, and Greg Bennett, a third defendant

who was also charged with violating the Controlled Substances Act. The cases of James D. Joyner have been tried; his wife's cases have not yet been tried. Before trial Mr. Paul was paid $1000.00, $500.00 of which was paid by Mr. Joyner and $500.00 by Mrs. Joyner. On June 7, 1976, nearly a month after the notice of appeal had been given, Mr. Paul was paid an additional $700.00 by check. There was some misunderstanding on the part of Mr. Paul and Mr. and Mrs. Joyner as to how the payments should be credited. Notwithstanding that, Mr. Paul undertook to represent the said James Douglas Joyner in the Superior Court and did represent him at his trial and represented him on appeal.

"Mr. Paul has presented a photocopy of a petition for certiorari in the case of James Douglas Joyner. It purports to be verified by him on November 16, 1976, and a certificate of service by him upon the Attorney General of North Carolina by mail on November 16, 1976. Notwithstanding the fact that Mr. Paul has had notice of this hearing since service upon him by the Sheriff of Durham County on January 18, 1977, he has offered nothing to show that a copy of such petition was ever received by the Court of Appeals. Furthermore, he has testified that neither was returned by the Post Office Department as being undelivered.

"At this time there has been no petition for certiorari filed with the Court of Appeals or any application for bond filed with the Court of Appeals or any petition for writ of habeas corpus or any other proceeding in the Federal Courts on behalf of James Douglas Joyner by his attorney, Mr. Paul."

On the basis of these findings the trial judge concluded that Paul's failure to perfect the appeal of his client or to petition this Court for a writ of certiorari and his false representations to the trial judge concerning a pending petition for certiorari constituted acts in contempt of court. From an order imposing a prison sentence of 5 days, suspended upon payment of a fine of $50.00, respondent appealed.

*Attorney General Edmisten, by Associate Attorney Joan H. Byers, for the State.*

*Loflin & Loflin, by Thomas F. Loflin III, for respondent.*

HEDRICK, Judge.

Respondent does not challenge any of the facts found by Judge Fountain. He contends that the findings of fact do not support the conclusions of law drawn by the trial judge from the findings, and that the conclusions do not support the order declaring him to be in contempt.

G.S. 5-1 in pertinent part provides: "Contempts enumerated; . . . — Any person guilty of any of the following acts may be punished for contempt: . . . (8) Misbehavior of any officer of the court in any official transaction."

"Misbehavior" is defined in Black's Law Dictionary 1150 (4th Ed. 1968), as "[i]ll conduct; improper or unlawful behavior." A synonym for this term, "misconduct in office," is defined as "[a]ny unlawful behavior by a public officer in relation to the duties of his office, willful in character." Black's Law Dictionary, *supra.*

In our opinion the uncontroverted findings of fact manifest the respondent's misbehavior within the meaning of G.S. 5-1(8) as an officer of the court in official transactions as follows: (1) By giving notice of appeal to the Court of Appeals and permitting the court to order that the respondent be provided a transcript of the defendant's trial at the State's expense, and respondent's acceptance of the transcript when the respondent has no intention whatsoever of perfecting the appeal or using the transcript in connection with the appeal; (2) By deliberately causing the defendant to lose his right of appeal by failing and refusing to obtain an extension of time within which to prepare and serve the record on appeal, and file the record on appeal in the appellate division; (3) By wilfully and intentionally failing and refusing to file a petition for a writ of certiorari in the Court of Appeals to obtain appellate review of defendant's trial, and by misrepresenting to the court the facts with respect to the filing of a petition for a writ of certiorari; (4) By breaching his professional duties to his client and to the public with respect to the administration of justice, and thereby deliberately prejudicing the rights of the defendant to obtain appellate review of his cases.

We hold that the findings of fact support the conclusions of law, and the record supports the order appealed from.

Affirmed.

Judges MORRIS and ARNOLD concur.